# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Criminal No. 05-342 (RCL) |
| | ) |
| **ARCHBOLD-MANNER, et al.** | ) |
| **Jesus Antonio Murillo-Lenis (02)** | ) |
| **Ranfer Rios-Mercado (03); Hugo Alvarez** | ) |
| **Lozano (15); German Villegas-Mejia (17),** | ) |
| **Gerardo Tobon-Rojas (18) and** | ) |
| **Fernando Zapata-Bermudez (19)**[1] | ) |
| | ) |
| **Defendants.** | ) |

## JOINT MOTION TO SUPPRESS EVIDENCE

The above-named defendants, by and through their undersigned counsel, respectfully move this Honorable Court, pursuant to Fed. R. Crim. P. 12 (b)(3) and the Fourth Amendment of the Constitution to suppress the evidence recovered during each and every seizure of a document, contraband, and/or thing in connection with each count in the indictment.[2]  In support of this Motion, the defendants rely upon the attached Memorandum of Points and Authorities.

---

[1]Because of the lack of adequate discovery, the defendants are unable to file the type of individual suppression motion that would typify a case of this nature and complexity.  For that reason, some defendants have joined in this issue to apprise the court of the issue without burdening the court with multiple motions.

[2]These defendants do not move, pursuant to Fed. R. Crim. P. 12 and the Fourth and Fifth Amendments, to suppress any and all statements because the government has made representations before the court that there are no statements made by any of the co-defendants.  This may not be accurate, however, since Juan Jose Heredia-Lopez is still listed as a defendant but it is clear that he made a statement(s).

Respectfully submitted,

_____/s/_____
Diane S. Lepley, Bar No. 368927
400 Seventh Street, N.W., Suite 400
Washington, D.C.  20001
(202) 393-0007
On Behalf of Ranfer Rios-Mercado


_____/s/_____
Cynthia Katkish, Bar No. 418876
On behalf of German Villegas-Mejia


_____/s/_____
Howard Katzoff
On behalf of Gerardo Tobon-Rojas


_____/s/_____
Mitchell Seltzer, Bar No.261933
On behalf of Fernando Zapata-Bermudez


_____/s/_____
Anthony Martin
On behalf of Jesus Murillo-Lenis


_____/s/_____
Heather Shaner
On behalf of Hugo Alvarez Lozano

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Criminal No. 05-342 (RCL) |
| | ) | |
| ARCHBOLD-MANNER, et al. | ) | |
| Jesus Antonio Murillo-Lenis (02) | ) | |
| Ranfer Rios-Mercado (03); Hugo Alvarez | ) | |
| Lozano (15); German Villegas-Mejia (17), | ) | |
| Gerardo Tobon-Rojas (18) and | ) | |
| Fernando Zapata-Bermudez (19)[3] | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
JOINT MOTION TO SUPPRESS EVIDENCE**

**Facts**

The third superseding indictment in this case charges all of the defendants, beginning on or about April 28, 2005 and ending without a definitive stop date, with conspiracy to distribute five kilograms or more of cocaine intending and knowing that the cocaine would be unlawfully imported into the United States. As a part of that conspiracy, different combinations of defendants are charged with individual distributions of cocaine on the following dates: (1) July 22, 2005, (2) January 21, 2005, (3) January 22, 2006, (4) March 7, 2006, and (5) March 24, 2006. Reportedly, there were seizures made of varying types on each of those dates. Contraband and non-contraband

---

[3]Because of the lack of adequate discovery, the defendants are unable to file the type of individual suppression motion that would typify a case of this nature and complexity. For that reason, some defendants have joined in this issue to apprise the court of the issue without burdening the court with multiple motions.

were seized. Some of the seizures were made on the sea where there may be multiple countries' overlapping jurisdictions and related bodies of law;[4] one occurred on the coastline; and several happened in the interior of a foreign country, Columbia. To determine whether there is any basis to move for suppression of any item, defendants must be given the necessary information by the government.

In all conspiracy cases, it is indisputable that the defendants need adequate discovery which provides them with information about the charges and sufficient data to make informed decisions about their individual cases and about whether any suppression motion lies. For example, for each of the five charged distributions, it is imperative to have: (1) a list of everything that was seized, (2) the specific location of the seizure,[5] (3) the person(s) from whom the item was seized, and (4) the circumstances of the seizure. We do not have all of this very basic information for any of the six counts.

Given the dire state of discovery in this case, it is impossible for the defendants to know whether anyone has standing to raise the issue because the discovery obligations have not been met. For example, for the seizure in July, 2005, we have been given 14 photos without any description of what they show and we have been presented with a brief report written only in Spanish.[6] We

---

[4] The precise location in the sea/ocean is unknown. Since there are different maritime considerations, treaties, and understandings depending upon the location and flag of the boat or ship, extraterritorial location may be critical.

[5] Just saying, for example, that there were multiple kilograms of cocaine found on one of two trucks which were physically located near a town is insufficient. Some questions, just to name a few, might be: which truck, where found in the truck, who was present in the truck, were there papers regarding ownership of the truck or bills of lading regarding any cargo.

[6] Numerous interpreters hired by the defense are working to translate attorney-client conversations in interview settings and to translate other documents as well as telephone

have no other information, other than the brief statement in Count Two charging some of the defendants. We do not know the roles of the charged defendants; we don't know who was on the boat or their nationalities, who owns the boat, who has some possessory or ownership connection to the boat. We do not know in what country the boat was registered or what flag it flew. We have zero documents or things other than the photos of what probably are cocaine bricks despite the fact that one of the provided photos shows a cooler, bucket, plastic bags and other wrapped objects. We have no information about any of those things nor have we been given the opportunity to inspect them, as mandated by Rule 16.

For the incident on January 21, 2006, we have two photos. Yesterday, we got a brief report about this but, again, it was in Spanish. We have no information about the truck, its ownership, its driver and/or passengers or anything that was found in it or on the people inside it. Other than an indication, via summarized headline on the slide, that 55 kilograms of cocaine were recovered, we have no data about any documents or things seized.

Many of the defendants endorsing this motion are charged in Count Four dealing with a seizure of certain documents. We have one photo of a coastline with boats and one slide stating three "papers seized from the Guayacan.." These consist of documents and/or maps with coordinates. We have no information about the significance of any of these items or where they were found. We have no police reports whatsoever about this event. We have been given no data about the Guayacan regarding its ownership, people connected to it, its boat log, etc. Since no drugs of any

---

conversations. To expect the defense bar, and not the prosecution, to be responsible for every piece of Spanish discovery is unreasonable. The government, at a minimum, should provide translated police reports which give the only real information about any of these counts. Moreover, these reports will have to be translated at some point. Earlier rather than later seems appropriate.

type or amount were recovered, we don't even have any details about why this incident is even charged in the indictment.[7]

The same dirth of information for the three counts referenced above is true also for the drug offenses charged on March 7 and March 24, 2006. None of the defendants is a citizen of the United States; however, Toban-Rojas has ties to this country, arguably of the type which would comply with the second prong of the joint venture body of case law. All of them were extradited here unwillingly after being held in the Columbian prison at the United States' request, for a large number of months in some cases. We have no information about when all of the defendants were arrested, how long they were incarcerated in Columbia before the United States issued extradition documents or what kind of notice or information the defendants were given about the nature of their captivity.[8]

**Argument**

Although the defendants do not possess sufficient information to make the type of legal analysis commonly undertaken before filing any suppression motion, the government will, in all likelihood, argue that the noted discovery deficiencies[9] are irrelevant for purposes of determining the Fourth Amendment rights of nonresident aliens. It is true that the Supreme Court has held in the past that the Fourth Amendment has no extraterritorial application. Ross v. McIntyre, 140 U.S. 453, 464 (1891). The Court also has held that the Amendment does not protect nonresident aliens against

---

[7]The government might say that there is some information in the telephone conversations but the prosecution has not designated any specific calls to date for any of the charged counts.

[8]These were the types of factual considerations which led to the Supreme Court finding that non-resident aliens held at Guantanamo Bay were entitled to due process considerations.

[9]The defendants should at least be given the missing information so that they may determine what are the appropriate legal arguments.

unreasonable searches or seizures conducted outside the sovereign territory of the United States. However, the Court also has ruled that the privilege against self-incrimination is a trial right which does apply to non-resident aliens subjected to the territorial jurisdiction of the United States. United States v. Verdugo-Urquidez, 494 U.S. 259, 274-5 (1990).

Prior to Verdugo-Urquidez, if a non-resident alien could show a joint venture between the United States and the extraditing country, then a search executed outside this country at our behest might operate to make the search subject to the Fourth Amendment's protections. This notion of a joint venture may arguably again be a consideration in light of Boumedine v. Bush, 128 S.Ct. 2229 (2008) which has now bestowed certain due process rights on the non-resident aliens being held as "terrorists" at Guantanamo Bay.

Where the United States participates in a joint venture with another sovereign, in this case Columbia, the question is whether that participation rises to the level where the acts of the Columbians should be attributed also to the United States. See Byars v. United States, 273 U.S. 28, 32 (1927); Pfeifer v. United States Bureau of Prisons, 615 F. 2d 873, 876 (9th Cir. 1980); United States v. Heller, 625 F. 2d 594,599 (5th Cir. 1980); United States v. Morrow, 537 F. 2d 120 (5th Cir. 1976). See also body of case law where the conduct of foreign officers shocks the conscience of the court. United States v. Heller, 625 F. 2d 594 (5th Cir. 1980).

There can be little argument that this wiretap investigation and related seizures were part of a joint venture. The United States provided financial support for the wiretaps initiated in Columbia and U.S. agents monitored the wiretaps along with their Columbian counterparts. See Government's Response To Gareth Lewis's Motion to Suppress Evidence at page 2. In fact, "this case arose out of an investigation **which began with the United States Drug Enforcement Administration in**

**2005**."[Emphasis supplied.] See Affidavit of DEA Special Agent Robert Zachariasiewicz in support of Extradition of these defendants. It was not begun in Columbia where the wiretaps and seizures were conducted. As further indicia of the joint nature of this investigation, one need only look to certain items provided during discovery. The United States gave the defense two documents bearing an insignia showing a "Rambo-like" para-military individual with a covered face, superimposed inside an official-looking badge containing the names of both countries. See Exhibits A and B bearing this insignia. Not only did they collaborate, but they felt a necessity to designate it with graphic arts and the name "Operation Mountain Mist."

What constitutional rights exist for non-resident aliens is a rapidly changing body of law. See Boumediene, supra. In that case, the Supreme Court held that non-resident aliens are accorded the constitutional privilege of habeas corpus and that they must be given due process. The joint venture between United States and Columbia and the Supreme Court's acknowledgment that the defendants' status as incarcerated non-resident aliens does not foreclose them from raising American principles of law provides support for this question of first impression that these defendants are entitled to Fourth Amendment protections.

It is axiomatic that "searches conducted outside the judicial process, without prior approval by a judge or a magistrate are per se unreasonable under the Fourth Amendment--subject only to a few specifically established and well-delineated exceptions." Katz v.United States, 389 U.S. 347, 357 (l967). Thus, where there was no search warrant, the Government bears the burden of proving that the search was valid. Coolidge v. New Hampshire, 403 U.S. 443 (l971). Since the Fourth Amendment protection against search and seizure requires probable cause for warrantless searches and seizures, Henry v. United States, 36l U.S. 98 (l959), this Court must determine whether there

was probable cause and whether the searches of the trucks and boats were permissible under one of the recognized exceptions to the warrant requirement.[10]

In deciding whether there was probable cause, the Court must determine whether the DEA had enough information reasonably to believe that a crime had been committed and that the arrested person had committed that crime. Bell v. United States, l02 U.S. App. D.C. 383, 254 F. 2d 82 (l958), cert. denied, 358 U.S. 885 (l958); Harrison v. United States, 267 A. 2d 368 (D.C. App. l970). Mere suspicion of criminal activity is not an adequate foundation for an arrest or search. United States v. Branch, l78 U.S. App. D.C. 99, 545 F. 2d 347 (l976). Furthermore, discovery of contraband does not rehabilitate an illegal arrest and subsequent bad search. United States v. Dire, 332 U.S. 58l (l948). None of the evidence in this case is admissible, because it is the fruit of the poisonous tree. Wong Sun v. United States, 37l U.S. 471 (1963); Gatlin v. United States, ll7 U.S. App. D. C. l23, 326 F. 2d 666 (l963).

**Conclusion**

For the above reasons and such others as may be raised at an evidentiary hearing, the defendants request that said motion be granted.

Respectfully submitted,

Diane S. Lepley, Bar No. 368927
400 Seventh Street, N.W., Suite 400
Washington, D.C. 20001
(202) 393-0007
On Behalf of Ranfer Rios-Mercado

---

[10] It is unknown whether there were any American or Columbia warrants served in connection with any seizure in this case.

## CERTIFICATE OF SERVICE

  I certify that on this _____ day of _____, 2008, a copy of the foregoing motion has been served by mail upon Patrick Hearn, Esquire, Department of Justice.

                   _____
                   Diane S. Lepley