UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )  <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ALVARO SERRRANO ) <br> ARCHBOLD-MANNER, *et al.* ) <br> ) <br> Defendants. ) <br> ) | CRIMINAL NO. 05-342 (RCL) |

FILED
SEP 18 2008
Clerk, U.S. District and
Bankruptcy Courts

**MEMORANDUM OPINION**

Now before the Court comes defendants' motion [190] to dismiss the indictment on due process grounds. Upon full consideration of the motion, the government's response, both parties' supplements and replies, the facts learned during the September 12, 2008 hearing, and applicable law, this Court finds, for the reasons set forth below, that defendants' motion will be DENIED.

I.   **BACKGROUND**

This case involves an alleged international cocaine distribution conspiracy that operated primarily out of Colombia. It began with the indictment of defendants Archbold-Manner, Murillo-Lenis, and Rios-Mercado on September 14, 2005, for conspiracy to distribute five kilograms or more of cocaine. (Mot. ¶ 1). Since that time, many additional defendants have been indicted as part of the conspiracy and additional counts have been added. Production of

1

discovery by the government, however, has remained spotty. On August 15, 2008, this Court ordered that the government make significant progress in its discovery production or risk severe sanctions. As a result of the order, in the last month the government produced CDs that contain approximately 10,000 pages of Spanish language documents, Spanish language tapes of wiretapped calls,[1] and limited physical evidence. No physical cocaine samples have been produced to the defendants, although the government maintains that at least a couple of samples exist. (Gov't's Resp. to Supp. 5.) The defendants allege that the delays in discovery are so prejudicial to the defendants that they warrant a dismissal of the indictment. (*See* Def.'s Supp. 12.) The government, on the other hand, argues that the delays are largely a result of the international complexity of the case. (Gov't's Omnibus Resp. 32.) Regardless of which position the Court accepts, dismissal is not warranted.

## II.   ANALYSIS

The defendants first contend that the government has failed to preserve and produce material evidence. (Def.'s Supp. 3.) The defendants argue that because the government has as of yet failed to produce any cocaine and seems unconcerned about its whereabouts, the government's actions implicate the due process concerns espoused in *Arizona v. Youngblood*, 488 U.S. 51 (1988).

*Youngblood* is clear that in order for discovery misconduct to warrant dismissal of an indictment, the defendant must either show that the government acted in bad faith or failed to

---

[1] Some transcriptions and English language translations have been produced, although their quality is a subject of significant controversy.

turn over material exculpatory evidence. *Youngblood*, 488 U.S. 51, 57–58. The defendants have shown neither in this case.

The government argues that the cocaine was in the hands of Colombian officials, and therefore it was not responsible for its destruction. The defendants respond that the cocaine was obtained as a result of a "joint venture" between the United States and Colombia and therefore the United States was responsible for maintaining and possibly destroying the cocaine. Even if the Court assumes, without deciding, that the operation was a "joint venture," there is no evidence of any bad faith on the part of United States or Colombian authorities. The United States appears to have been trying—albeit with a belated sense of urgency—to obtain samples of the cocaine and bring them to the United States but has thus far been rebuffed by Colombian authorities. (Gov't's Resp. to Supp. 5.) Some of the samples were apparently destroyed in accordance with standard Colombian procedures because three years had elapsed since the time they had been seized (Gov't's Resp to Supp. 5), indicating a lack of bad faith on the part of the government. *See California v. Trombetta*, 467 U.S. 479, 488 (1984) (destruction of defendant's breath samples in accordance with normal police procedures did not amount to bad faith). While the snail-like production of discovery may have contributed to the destruction of some of the samples, there is no evidence that the government intentionally withheld or destroyed evidence. Therefore, the indictment cannot be dismissed on due process grounds. *See Youngblood*, 288 U.S. at 57 (stating that the Due Process Clause is not implicated "when we deal with the failure of the State to preserve evidentiary material of no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant").

Indeed, *Youngblood* itself involved the loss of evidence resulting from conduct by the

3

police that may have been negligent. *Youngblood,* 488 U.S. at 58 (the conduct of the police "can at worst be described as negligent"). Yet the Supreme Court still refused to dismiss the indictment. Similarly, in this case, even if this Court assumes that the United States was acting as a joint venture and that cocaine was destroyed, there is no evidence that the cocaine was exculpatory or that the United States was responsible for its destruction in bad faith.[2]

The defendants also contend that the manner in which discovery has proceeded in this case constitutes prejudice to the defendants so severe that it amounts to bad faith. (Def.'s Supp. 6–12.) The defendants object to the months of sporadic discovery followed by a massive dump of additional information approximately a month before the case was set for trial. While the defendants' factual synopsis of what occurred in this case is correct, there is no legal support for the defendants' contention that it warrants dismissal of the indictment. The defendants cite *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976), for the proposition that a callous disregard of responsibilities can amount to bad faith. Of course, as the defendants note, this decision occurred in the civil context. Moreover, even if the case were criminal, any language about a standard less than bad faith warranting dismissal of an indictment would have been superseded by *Youngblood.*

The defendants appear to realize that the legal support for their argument is weak, as their recent filings read more like lists of grievances than legal briefs. The defendants tell the Court that "the time has come" to send a message to the government regarding the massive discovery delays in international cases. (*See* Def.'s Supp. 12.)

---

[2] Of course, defendants' arguments regarding how the evidence was obtained and stored may be relevant in challenging the admissibility of the evidence, which the Court does not decide at this time.

While the Court shares the defendants' frustrations over the timing and manner of discovery in this case, it is a result of either the complexity and international nature of the case, the carelessness of Colombian and/or United States investigators and prosecutors, a cavalier attitude by authorities about moving the case along, or, more than likely, a combination of the above factors. Nonetheless, none of the factors amount to bad faith. As discussed above, *Youngblood* is clear that it is the defendant's burden to show either bad faith or the failure to disclose material exculpatory evidence before an indictment should be dismissed on due process grounds. There is simply no evidence that the government intentionally destroyed evidence, failed to produce material exculpatory evidence, or intentionally delayed the production of evidence. As a result, if defendants want a message to be sent regarding the delayed discovery process that often occurs in international drug conspiracy cases, that message must be sent by a court higher up in the heirarchy, as this Court is bound by the decision in *Youngblood*.

The defendants argue that the Court should, at the very least, sanction the government for its questionable method of producing discovery in this case. (Def.'s Resp. to Gov't's Notice Regarding Availability of Evidence 2.) The Court agrees.

The government, because of its failure to take care of discovery matters that should have been taken care of months ago, failed to comply with the Court's August 15, 2008 order. The Court ordered the government to produce all telephone calls it intended to use at trial along with certified original language and English transcripts by September 1. As of September 11, the government had not produced any original language certifications, and the quality of the translations into English were subject to considerable criticism. The Court also ordered that the government produce lab tests of cocaine with "clear instructions" as to how defense counsel

could verify the accuracy of the tests. The government did not leave any instructions and instead left it upon defendants to try to read the lab reports to search for the name and number of the original chemist who tested the cocaine samples. The government took a similar approach with respect to the Court's August 15 order that the government provide the identity of any law enforcement agent who took witness statements in the matter. The government represented at the September 12th hearing that because the names of the agents were not redacted in any of the Spanish language documents that were provided, the defendants could have figured out the names of the interrogating agents themselves. Simply providing a non-redacted document in a foreign language clearly does not comply with the Court's specific order to provide the identities of investigating agents.

The government's conduct since the August 15 order does not, however, constitute bad faith. To the contrary, the government appears to have been finally motivated to produce a plethora of materials in a short period of time. The fact that the government failed to comply with the Court's order in some respects is largely a result of having too much to do in too little time, given that the government had approximately two weeks to produce thousands of pages of documents, lab tests, calls, and statements. However, the predicament the government found itself in was largely of its own making. The government would not have had so much difficulty complying with the order had it been more self-motivated regarding its obligations and not waited for a court order before producing the bulk of its discovery.

### III.   CONCLUSION

As a result of the belated production of evidence, the Court has no choice but to vacate

the October 1st trial date. The defendants' motion to dismiss is DENIED. The Court will promptly schedule a further hearing to consider suggestions for how to get this case back on track and consider appropriate sanctions against the government.

SO ORDERED.

_____          _9/18/08_
Chief Judge Royce C. Lamberth            Date

Case 1:05-cr-00342-RCL  Document 279  Filed 09/18/2008  Page 8 of 8